UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEONARD J. BRYANT JR, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00309-MJD-SEB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# Order

Plaintiff Leonard J. Bryant, Jr. ("Bryant" or "Claimant") requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth, the Court **REMANDS** the case for further proceedings consistent with this opinion.[1]

## I. Background

**A.   Procedural History**

On June 8, 2007, Bryant filed applications for DIB and SSI, alleging disability beginning on March 30, 2007. Bryant's applications were initially denied on August 30, 2007. After reconsideration, Bryant's applications were denied again on October 1, 2007. Following this

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court.  28 U.S.C. § 636(c)(3).

second denial, Bryant requested a hearing, which was held before Administrative Law Judge Robert E. Hanson ("the ALJ") on September 3, 2009. On February 25, 2010, the ALJ denied Bryant's applications. Bryant requested review of the ALJ's decision by the Council of Appeals. The Council of Appeals denied review on December 28, 2010, making the ALJ's determination the final decision of the Commissioner. On February 28, 2011, Bryant filed this timely appeal requesting the Court's review of the ALJ's denial pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

Bryant has a high school education and was 33 years old at the onset date of his alleged disability. In the past, he has worked as a plumber, plumber's digger, spot welder, machine operator, material handler, and metal assembler. His alleged disability resulted from the following impairments: degenerative disc disease with a pars defect, hypertension, sleep apnea, obesity, depression, a pain disorder, a learning disability, and marijuana abuse. Bryant did not dispute the ALJ's findings regarding his physical limitations, so this case focuses on his mental limitations.

Bryant has a long history of consultations, evaluations, and treatment by mental health professionals. Bryant's medical records reveal a diagnosis of depression and some treatment of the condition. [R. 354-55; 358; 361; 365-66.] During Bryant's ALJ hearing he testified that depression had been a problem "there for a while, but now, you know I try not to dwell on things too much." [R. 41.] Bryant also testified that he had a prescription for Cymbalta, an anti-depressant, but did not take it. [R. 48.]

In October 2005, psychologist Dr. Marilyn Nathan performed a psychological evaluation of Bryant on behalf of Vocational Rehabilitation Services of Muncie. Dr. Nathan found that Bryant's verbal IQ was high in the very superior range, despite the adverse effects of test

anxiety. [R. 219-20.] Dr. Nathan also found that Bryant was "not easily distracted and did not seem to have any difficulty focusing his attention." [R. 219.] Dr. Nathan, however, diagnosed Bryant with a learning disability and noted that "his reading word recognition level is at the 6th grade, spelling level at the 5th grade and arithmetic level at the 5th grade. His reading comprehension level is at the high school level or above." [R. 223.]

In July 2007, Bryant was examined by psychologist Dr. Ceola Berry on behalf of the Social Security Administration ("SSA"). Bryant reported a history of speed and acid usage, DUIs, and court ordered substance abuse treatment. [R. 245.] Bryant also reported that he currently used alcohol, marijuana, and nightly over-the-counter sleeping pills. [*Id.*] Bryant denied receiving psychiatric services and admitted to abusing his own prescription medication. [*Id.*] Bryant self-reported depression to Dr. Berry. [R. 247.] Dr. Berry found that Bryant's "concentration and attentiveness to task completion were adequate" and that he was "cooperative and easily engaged." [R. 247.]

In August 2007, Dr. F. Kladder, a state agency psychologist, performed a psychological review of Bryant and found that his impairments were not severe. [R. 306.] Dr. Kladder diagnosed Bryant with a pain disorder and also found a substance abuse disorder. [R. 309; 314.] From his review, Dr. Kladder identified Bryant with a mild limitation in maintaining concentration, persistence, or pace. [R. 316.] Dr. Kladder's findings were confirmed by another non-examining state agency psychologist. [R. 329.]

## II. Disability and Standard of Review

### A. Social Security Disability Procedure

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five step sequential analysis. The first step asks whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §416.920(a)(4)(i)[2]. If he is engaged in substantial gainful activity then he is not disabled, despite his medical condition and other factors. The second step determines whether the claimant has a medically determinable impairment or combination of impairments that is severe (significantly limits his ability to perform basic work activities) and meets the durational requirement. 20 C.F.R. 416.920(a)(4)(ii). If his impairment or combination of impairments is not severe or does not meet the 12 month durational requirement, then he cannot be disabled. In the third step, the Commissioner determines whether the claimant's severe impairment or combination of impairments meet the durational requirement and meet or medically equal the criteria listed in 20 C.F.R. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant meets or medically equals the listed criteria and the durational requirement then he is disabled; if not, the analysis proceeds to the fourth step.

Prior to embarking on steps four and five of the analysis, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). The RFC is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue,* 539 F.3d 668, 675-76

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, the Court cites only to the SSI sections in discussing the standard for determining whether a claimant is disabled.

(7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). In step four the ALJ determines if the claimant can perform his past relevant work. If he can perform his past relevant work then he is not disabled. 20 C.F.R. 416.920(a)(4)(iv). At step five, the burden of proof shifts to the SSA to demonstrate that there are other jobs available to someone with the claimant's limitations, age, education, and work experience. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). In the fifth and final step, the ALJ determines if the claimant can perform any other work in the national economy. 20 C.F.R. 416.920(a)(4)(v). If he can perform any other work, he is not disabled; if he cannot he is disabled.

### B. Judicial Standard of Review

If the Commissioner's findings are supported by substantial evidence then they are conclusive. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft*, 539 F.3d at 673; *see also Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004). The Court deferentially reviews the ALJ's decision and must uphold the ALJ's findings of fact if they are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180,181 (7th Cir. 1993). However, the ALJ's decision must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 1994). Furthermore, the Court may not "reweigh the evidence or substitute our judgment for that of the

ALJ." *Overman v. Astrue*, 546F.3d 456, 462 (7th Cir. 2008); *Schmidt v. Apfel*, 201 F.3d, 970, 972 (7th Cir. 2000).

When there is an error of law "reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980). Additionally, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, … or … fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

### III. The ALJ's Decision

In the first step, the ALJ found that Bryant was not engaged in substantial gainful activity. [R. 16.] At the second step, the ALJ found that Bryant had the following severe impairments: "degenerative disc disease, sleep apnea, obesity, depression, a pain disorder, a learning disability, and marijuana abuse." [*Id.*] In the third step the ALJ found that Bryant's impairments or combination of impairments did not meet or medically equal the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 16-17.] The ALJ also found that Bryant had moderate limitations in concentration, persistence, or pace. The ALJ determined that Bryant had the RFC to perform sedentary work additionally restricted to simple and repetitive work. [*Id.* at 19-22.]

Given Bryant's RFC and the standing, walking, and/or lifting that his previous jobs required, the ALJ found that "the claimant is unable to perform his past relevant work" in step four. [*Id.* At 22.] In the fifth and final step, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [*Id.*] Specifically, the ALJ found that Bryant could take a job as an information clerk, assembler, machine operator, or hand packager and there were at least 500 of each of these positions in the state of Indiana.

[*Id.*] This list of alternative jobs that Bryant could perform, despite his limitations, satisfied the burden of proof upon the SSA in step five. Therefore, the ALJ concluded that Bryant is not disabled under the Act.

## IV. Discussion

To arrive at decisions in steps four and five, the ALJ enlisted the expertise of a Vocational Expert ("VE"). Generally, VEs testify at the hearing, but in the instant case the VE responded to interrogatories that included two hypothetical questions. Bryant contends that the hypotheticals posed by the ALJ to the VE failed to incorporate his moderate degree of limitation in concentration, persistence, or pace despite limiting Bryant to sedentary, simple and repetitive work. In turn, Bryant argues that the outcome of the five-step process was flawed. The Commissioner argues that the ALJ's hypothetical was not required to explicitly include Bryant's limitation in concentration, persistence, or pace.

To fully understand Bryant's argument, it is useful to briefly explain Bryant's limitations of concentration, persistence, or pace and the ALJ's RFC. First, the Court will examine Bryant's limitations in concentration, persistence, or pace. Next, the Court will discuss the RFC because it is one of the factors feeding into the ALJ's hypothetical. Finally, the Court will discuss the ALJ's hypothetical and its treatment of the claimant's moderate limitation in concentration, persistence or pace, the issue at hand.

### A.  Concentration, Persistence, or Pace

To determine the severity of a claimant's mental impairments in steps two and three, the ALJ determines whether the claimant has marked[3] restrictions in two or more of the following

---

[3] The ALJ evaluates these limitations using the following scale of increasing severity: none, mild, moderate, marked, or extreme. *Craft*, 539 F.3d at 674-75; 20 C.F.R. § 404.1520a(c)(4).  The ALJ also found that Bryant had no episodes of decompensation.

categories: daily living; social functioning; and/or concentration, persistence, or pace. [R. 17.] The ALJ found that Bryant did not have marked restrictions in any of the categories, so his impairments did not meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 19.] The ALJ did find, however, that Bryant has moderate difficulties with concentration persistence, or pace. [R. 18.]

## B. Residual Functional Capacity

The ALJ determined that Bryant had the RFC to perform sedentary work with the further limitation that he is restricted to simple and repetitive work. [R. 19.] The ALJ's decision explained that the limitation to sedentary work is designed to accommodate the claimant's degenerative disc disease. [*Id.*] The decision also explained the limitation of simple and repetitive work as a mental restriction "designed to accommodate the claimant's depression, marijuana abuse, and learning disability, as he is only at a fifth grade level in reading and math." [R. 19-20.] Although the ALJ's decision loosely links the limitation of "simple and repetitive work" to the claimant's depression, this link was not present in the hypothetical posed to the VE, which the Court discusses below.

## C. The ALJ's Hypothetical

As a general rule, when the ALJ poses hypothetical questions to the VE, the ALJ must orient the VE to the totality of the claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The totality of a claimant's limitations include limitations in concentration, persistence, or pace. *Id.* The Seventh Circuit advised that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.* at 619. Although the general rule of *O'Connor-Spinner* strongly favors including the phrase "concentration, persistence, or pace" in the hypothetical posed to the

8

VE, the Seventh Circuit has not required usage of those exact words if the hypothetical falls into one of three exceptions. *Id.* at 619-620.

Here, the ALJ prefaced his questions to the VE with the following hypothetical that incorporated the ALJ's RFC:

> Assume that the hypothetical individual has a combination of exertional and nonexertional limitations arising out of degenerative disc disease with a pars defect, hypertension, sleep apnea, obesity, depression, a pain disorder, a learning disability, and marijuana abuse. As a result of these conditions and the symptoms they produce, the hypothetical individual is limited to simple, repetitive tasks with only fifth grade reading and math. The hypothetical person otherwise can perform sedentary work (sitting for six hours in an eight-hour day, lifting ten pounds occasionally and lesser weights frequently).

[R. 205; 211.] The claimant zeroes in on this hypothetical[4] and argues that it did not apprise the VE of the claimant's limitations in concentration, persistence, or pace due to his mental conditions. According to the claimant, simply stating that Bryant is limited to simple, repetitive tasks does not adequately orient the VE to his moderate difficulties in concentration, persistence, or pace.

In his decision, the ALJ stated, "I find no functional consequence of the claimant's limitation in this area [concentration, persistence, or pace] beyond an inability to sustain detailed or complex work processes, and in the case at hand, a restriction to simple repetitive tasks encompasses that restriction." *Id.* The ALJ went on to state that he did not find Bryant's moderate limitations a separate functional limitation, "or one that is different in degree, from restriction to simple, repetitive tasks that I have assessed … at step four." The ALJ's statement, however, flies in the face of the decision in *O'Connor-Spinner*, which stated that "[i]n most cases… employing terms like 'simple, repetitive tasks' will not necessarily exclude from the

---

[4] The ALJ posed a second hypothetical focused on the claimant's physical limitations, which are not disputed in this appeal.

9

VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.2d at 620 (citations omitted). Thus, the ALJ's hypothetical restriction of "simple and repetitive work" did not encompass the claimant's moderate limitations in concentration, persistence, or pace.

The Commissioner argues that, while the words "concentration, persistence, or pace" are not included in the hypothetical, this omission is not fatal, because the hypothetical falls into two of the three exceptions. *O'Connor-Spinner*, 627 F.3d 619-620. The first exception[5] applies when the VE independently learns of the claimant's limitations through hearing testimony or reviewing the claimant's medical records prior to the ALJ's hypothetical questions. In such cases, presumably the VE's answer accounts for his or her knowledge of the claimant's limitations. *O'Connor-Spinner*, 627 F.3d at 619; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). This exception does not apply in cases where the ALJ poses "a series of increasingly restrictive hypotheticals to the VE, because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *O'Connor-Spinner*, 627 F.3d at 619. Here, the Commissioner does not argue that the first exception should apply, presumably because the ALJ posed increasingly restrictive hypotheticals to the VE.

The second exception allows the ALJ's hypothetical to omit the terms concentration persistence or pace when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* at 619. The Court allows this exception to the general requirement of including concentration, persistence, or pace limitations in a hypothetical "most often … when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *Id.*

---

[5] Exceptions are discussed in the order they appear in the *O'Connor-Spinner* opinion. 627 F.3d 619-20.

As the claimant correctly points out, there are no such stress- or panic-related limitations at play in this case, nor did the ALJ restrict the hypothetical to low-stress work. [Dkt. 21 at 2-3.]

In his discussion of this exception, the Commissioner argues that the ALJ's restriction to simple and repetitive tasks was sufficient to account for Bryant's limitations due to "manifest evidence in the record" supporting the ALJ's finding. [Dkt. 26 at 5.] In fact, as the ALJ points out, the record is replete with examples of Bryant's daily activities exceeding the limitations one would expect considering his alleged symptoms. [R. 22.] However, as discussed in the previous section, *O'Connor-Spinner* challenges the legal sufficiency of replacing limitations in concentration, persistence, or pace with a restriction to "simple, repetitive tasks" because this inaccurate substitution could allow the VE to recommend jobs precluded by the claimant's limitations. *O'Connor-Spinner*, 627 F.3d at 620.

Additionally, the Commissioner misinterprets this exception. This exception applies when the ALJ's alternative phrasing in the *hypothetical* manifests the claimant's limitations, not when claimant's limitations are manifested in the record. Both the general rule requiring the expressed inclusion of the words "concentration, persistence, and pace" and the exceptions to the rule exist to ensure that the VE is oriented to the totality of the claimant's limitations. Even if the claimant's limitations are manifest in the record, most VEs will not review the record and will not be oriented to the totality of the claimant's limitations. Moreover, if the VE reviews the record then the applicable exception is the first exception, not the second. Accordingly, the second exception does not apply.

The third exception allows the ALJ's hypothetical to substitute a claimant's underlying conditions for his limitations when there is an "apparent enough" link between them. *O'Connor-Spinner*, 627 F.3d at 620. This exception arose in *Simila,* when the Seventh Circuit held that a

11

hypothetical mentioning pain and a somatoform disorder incorporated the claimant's concentration, persistence, or pace limitations. *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009). In that particular case, the ALJ's hypothetical stated "…because of the allegations of pain, I would also further limit [the hypothetical individual's work] to unskilled." *Id.* at 521. Later, in *O'Connor-Spinner*, the Seventh Circuit stated that the link in *Simila* between one specific condition—pain—and a limitation—unskilled work—was "apparent enough." *O'Connor-Spinner*, 627 F.3d at 620. It is important to recognize that the ALJ's hypothetical in *Simila* used one particular underlying condition to justify one of the restrictions in her hypothetical.

The Seventh Circuit, however, conspicuously disfavors this exception, calling it "consistent with the general rule, albeit just barely so." *Id.* at 620. Additionally, although the Circuit allows this exception, it called the hypothetical in *Simila* "troubling" for its failure to specifically include limitations on concentration, persistence, or pace. *Id.* The Commissioner argues that this exception applies, dispensing with the requirement to expressly mention Bryant's limitation in concentration, persistence, or pace. [Dkt. 26 at 4.] The Commissioner claims that *O'Connor-Spinner* reaffirms *Simila* and the Commissioner does not mention the Seventh Circuit's skepticism regarding the third exception. [Dkt. 26 at 4.]

In the case at bar, the ALJ's hypothetical began with a laundry list of Bryant's physical and mental conditions. Unlike the hypothetical in *Simila*, the hypothetical here failed to connect any particular underlying condition with an associated limitation. This is a significant distinction. The link in *Simila* was more direct and explicit than the link in the present case, yet the hypothetical in *Simila* scarcely passed muster.

Without a more direct link, the ALJ's hypothetical effectively required the VE to play the role of a medical professional and diagnose Bryant's functional limitations based on his physical

12

and mental conditions. The Court recognizes that the VE is not a medical professional, nor should she be required to act as one. Despite the ALJ's own finding that Bryant had a moderate limitation in concentration, persistence, or pace, he failed to mention this important limitation, nor did he single out any of Bryant's conditions and link it with the limitation. Despite the Court's deferential standard of review, the ALJ's hypothetical failed to make an "apparent enough," logical bridge between any of Bryant's underlying conditions and his moderate limitation in concentration, persistence, or pace. Therefore, the third exception does not apply.

In sum, the *O'Connor-Spinner* ruling requires the ALJ to orient the VE to the totality of a claimant's limitations.[6] 627 F.3d at 619.  The Seventh Circuit provided further guidance by advising that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.* Although the Seventh Circuit acknowledged that "there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in remand," they continued on, saying, "for most cases the ALJ should refer expressly to limitations on concentration, persistence, or pace in the hypothetical…" *Id.* at 620-21. Two important points flow from this ruling: First, the presumption is that the ALJ will expressly include limitations in concentration, persistence, or pace in the hypothetical. To do otherwise is a "lapse" on behalf of the ALJ, however it is not necessarily incurable. Secondly, the majority of cases should expressly refer to limitations in the hypotheticals rather than using an exception to survive review. The exceptions are narrowly drawn, used in the minority of cases, and the *Simila* exception is especially disfavored in the eyes of the Seventh Circuit.

---

[6] It is important to note the difference between the SSA's usage of the terms "limitations," and "conditions." The SSA uses "limitations" to refer to categories of functional deficiencies, such as a decreased ability to maintain concentration, persistence, or pace. Physical and mental "conditions," such as depression and pain, can cause "limitations."

Despite the ALJ incorporating his RFC that restricted Bryant to "simple and repetitive work," the ALJ's hypothetical, nonetheless, failed to include the claimant's moderate limitation in concentration, persistence, or pace. None of the three exceptions allowing such an omission applies to this case. As a result, the VE was not oriented to the totality of the claimant's limitations. Because the ALJ utilized the VE's testimony to arrive at his decisions in steps four and five, those determinations were made without substantial evidence. Therefore, the five step process did not satisfactorily conclude. Upon remand the ALJ should pose a rephrased hypothetical(s). In so finding, the Court makes no determination about the validity of Bryant's alleged disability or the credibility of his claims because the five step analysis did not conclude properly.

## V. Conclusion

For the above stated reasons, the Court **REMANDS** the case for further proceedings consistent with this opinion.

Dated:    07/31/2012

Distribution List: all counsel registered with CM/ECF.

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana